UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v- | : APPLICATION OF ASSISTANT<br>UNITED STATES ATTORNEY |
| JOHN B. OHLE III, and<br>WILLIAM E. BRADLEY, | : STANLEY J. OKULA, JR., IN<br>SUPPORT OF SUPPLEMENTAL<br>: POST-INDICTMENT RESTRAIN-<br>ING ORDER PURSUANT TO |
| Defendants. | : 21 U.S.C. § 853(e)(1)(A) |
| | : S1 08 CR 1109 (LBS) |

------------------------------- x

The United States respectfully submits this application, pursuant to 21 U.S.C. § 853(e)(1)(A), for an order restraining JOHN B. OHLE III, the defendant, from engaging in the transfer, sale, assignment, pledge, hypothecation, encumbrance, dissipation, or movement of certain assets. In support thereof, I respectfully submit the following:

## I. INTRODUCTION

A.   I am an Assistant United States Attorney in the United States Attorney's Office for the Southern District of New York, and am one of the attorneys responsible for the prosecution of the above-captioned case.

B.   On November 13, 2008, a grand jury in the Southern District of New York returned an indictment charging JOHN B. OHLE III, the defendant, with, among other things, conspiracy to commit wire fraud (Count Five) in connection with the defendants' involvement in a scheme and artifice to defraud the defendant's former financial institution

employer ("Bank One"), and a scheme to defraud Bank One and its shareholders of their intangible right to the honest services of OHLE. More specifically, the Indictment alleged that OHLE and others devised and executed a scheme to defraud Bank One through the creation and submission of false and fraudulent invoices, which invoices sought payment of third-party referral fees to which the purported service providers listed on the invoices were not entitled. That scheme, the Indictment alleged, resulted in the receipt by OHLE of hundreds of thousands of dollars of referral fees to which he was not entitled. See Indictment 08 Cr. 1109 (LBS) (the "Indictment") ¶¶ 82 and 86-96.

C. The Indictment sought the forfeiture of, among other things, the following pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461:

1. At least $1,750,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the conspiracy to commit the wire fraud offense contained in Count Five, for which OHLE, the defendant, is jointly and severally liable;

2. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1940 Chestnut Avenue, Wilmette, Illinois 60091, more particularly described as the single-family home owned by OHLE;

3. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 837 Royal Street, Unit K, New Orleans, Louisiana 70116, more particularly described as a condominium owned and controlled by OHLE and titled in the name of Dalton-Ohle Investment Property Trust;

4. One 2001 Upper Deck SP Legendary Cuts Player Cap Anson Baseball Card;

5. Five PSA 10 2001 SP Authentic Tiger Woods Cards, more particularly described as: Signs of the Times Gold, numbered to 25; Rookie Card number 45 Gold Parallel, numbered to 100; Rookie Card number 45, numbered to 900; Tour Swatch; and Tour Swatch Gold, numbered to 25;

6. All United States currency funds or other monetary instruments credited to account number 9006623694 in OHLE's name at Hibernia National Bank, New Orleans, Louisiana; and

7. All United States currency funds or other monetary instruments credited to account number 5040000308 in OHLE's name at MB Financial Bank;

all representing property involved in or traceable to the conspiracy offense charged in the Indictment.

D. On or about November 18, 2008, the Government sought a Post-Indictment Restraining Order, alleging that, pursuant to the allegations of the initial Indictment, certain assets subject to forfeiture upon conviction of the defendant for violation of federal law, and that those assets — "proceeds" of the Count Five conspiracy — should be restrained, pursuant to the authority set forth below. On or about December 18, 2008, this Court signed the proposed Order submitted by the Government, seeking restraint of the property and items claimed to be "proceeds" of the Count Five offense of the initial indictment. On or about December 18, 2008, the grand jury returned a Superseding Indictment, which, among other things (i) alleged a wire fraud object of the Count One tax shelter conspiracy, thus providing a statutory basis for forfeiture of the "proceeds" of the Count One offense; (ii) sought money judgments in an aggregate amount in excess of $100,000,000, as a result of the Count One and Count Five conspiracies; and (iii) set forth additional items that are subject to forfeiture as "proceeds" of the Count One and Count Five conspiracies. Pursuant to an oral motion made by the Government on December 18, 2008, this Court temporarily restrained the assets and items identified in the Superseding Indictment as "proceeds" of the Count One and Count Five offenses, subject to submission of a full set of motion papers. We now seek restraint of the "proceeds" described below, based on the following authority.

## II. AUTHORITY FOR RESTRAINING ORDER

E. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C. § 1956(c)(7)]), or a conspiracy to commit such offense," is subject to forfeiture to the United States. This provision, standing alone, is a civil forfeiture provision. However, where federal law provides for civil forfeiture but there is no parallel criminal forfeiture provision, criminal forfeiture is mandated nonetheless, pursuant to 28 U.S.C. § 2461.[1] The procedures applicable to forfeitures under these statutes are the procedures governing narcotics forfeitures, which are set out in 21 U.S.C. § 853 (other than § 853(d)). *See* 28 U.S.C. § 2461(c).

---

[1] Title 28, United States Code, Section 2461(c) provides:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act.

F.  To protect the ability of the United States to exercise its right of forfeiture, 21 U.S.C. § 853(e) empowers district courts to enter restraining orders and injunctions to preserve the availability of property subject to forfeiture. Under Section 853(e)(1)(A), a restraining order may be obtained upon the filing of an indictment, or superseding indictment, charging a violation for which criminal forfeiture may be ordered and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture.[2]

G.  Furthermore, if the district court determines that there is probable cause to believe that the property seized would, in the event of conviction, be subject to forfeiture and that an order pursuant to Section 853(e) may not be sufficient to assure the availability of the property for forfeiture, Section 853(f) empowers district courts to issue a warrant authorizing the seizure of such property. Under 21 U.S.C. § 853(l), the district court has

---

[2]  Title 21, United States Code, Section 853(e)(1)(A) provides:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section –
>
> (A)  upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section[.]

jurisdiction to enter restraining orders under Section 853(e) (as well as the other subsections of Section 853) "without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section." Courts in this Circuit have regularly imposed restraining orders pursuant to 21 U.S.C. § 853(e) to ensure that the forfeiture penalty mandated by the narcotics, money laundering, wire and bank fraud statutes will not be frustrated by dissipation of the defendant's assets.[3] By entering a restraining order, the Court can preserve the status quo pending the jury's verdict. *See id.* at 119-21.

### III. THE ASSETS SOUGHT TO BE RESTRAINED

H. Through the return of the superseding Indictment, the Government seeks to restrain the interests of JOHN B. OHLE III, the defendant, in the following assets:

1. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1940 Chestnut Avenue, Wilmette, Illinois 60091, more particularly described as a single-family home owned by OHLE;

2. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 837

---

[3] *See also, e.g., United States v. Rudaj*, No. S1 04 Cr. 1110 (S.D.N.Y. Oct. 25, 2004) (Sweet, J.); *United States v. Grant*, No. 04 Cr. 207 (S.D.N.Y. March 17, 2004) (Jones, J.); *United States v. Irving*, No. 00 Cr. 678 (S.D.N.Y. July 13, 2000) (Hellerstein, J.); *United States v. Lino*, No. 00 Cr. 632 (S.D.N.Y. June 13, 2000) (Koeltl, J.); *United States v. Bellomo*, No. 96 Cr. 430 (S.D.N.Y. June 10, 1996) (Mukasey, J.).

Royal Street, Unit K, New Orleans, Louisiana 70116, more particularly described as a condominium owned and controlled by OHLE and titled in the name of Dalton-Ohle Investment Property Trust;

3. All United States currency funds or other monetary instruments credited to account number 9006623694 in OHLE's name at Hibernia National Bank, New Orleans, Louisiana;

4. All United States currency funds or other monetary instruments credited to account number 5040000308 in OHLE's name at MB Financial Bank;

5. One 2001 Upper Deck SP Legendary Cuts Player Cap Anson Baseball Card;

6. Five PSA 10 2001 SP Authentic Tiger Woods Cards, more particularly described as: Signs of the Times Gold, numbered to 25; Rookie Card number 45 Gold Parallel, numbered to 100; Rookie Card number 45, numbered to 900; Tour Swatch; and Tour Swatch Gold, numbered to 25;

7. 1933 R338 Goudey "Sports Kings" #4 Red Grange PSA 7;

8. 1948 and 1960 Philadelphia Eagles Championship Programs and Tickets;

9. One 1951 Chicago Bears Autograph Book;

10. 1968 Football Topps Test Team Sets (25);

11. One 2000 Oklahoma Sooners Signed Helmet;

12. Walter Payton Signed Football Cards (6);

13. "Pistol Pete" Maravich Signed Sports Illustrated Cover;

14. 1971-1972 Topps Basketball Trios Stickers Complete Sets (26);

15. 1985 Star Basketball Bagged Team Sets (8);

16. One "Pistol Pete" Maravich Signed 8x10 Photo;

17. 1984 Star Co. Basketball Sets (3) with Michael Jordan;

18. 1880's N78 Duke "Histories of Generals" Booklets (17);

19. Gen. Robert E. Lee & Traveler in Original Box;

20. Chicago Cubs Portraits Collection (22) by Andy Jurinko;

21. One 1961 Roger Maris 61st Home Run Ticket Stub;

22. Paul Waner Single Signature Baseball;

23. Burleigh Grimes & Edd Roush Signed Portrait Baseballs;

24. 1948 Leaf Boxing PSA 8 Group with Joe Louis (22);

25. 1951 Topps Ringside #43 Ray Robinson PSA 8;

26. Muhammad Ali Fight Tickets (3);

27. 1976 Ali vs Young Fight Program;

28. 1976 Muhammad Ali vs Richard Dunn Full Ticket;

29. 1977 Ali vs Shavers Fight Program & Full Ticket;

30. Joe DiMaggio Painted and Signed Home Plate;

31. Oversized Dr. Seuss Signed Original "Cat in the Hat" Drawing;

32. "Mushmouth" Fat Albert Animation Cel Signed by Bill Cosby;

33. Ted Knight's "Judge Smails" Captains Hat From "Caddy Shack";

34. Batman Movie Prop Badge;

35. George Bush Limited Edition Signed Yale Baseball Jersey;

36. Chicago Cubs Sign;

37. George Mikan's 50 Greatest Players Signed Lithograph;

38. Julius Erving Game Worn Shoes;

39. Karl Malone Game Used Road Jersey;

40. Shaquille O'Neal Game Used Home Jersey;

41. Complete Run of Original Super Bowl Tickets (1-35);

42. 1979-80 "Pistol Pete" Maravich Boston Celtics Game-Worn Warmup Jacket;

43. 1982 Final Four Full Tickets (2);

44. The Ultimate Mickey Mantle Single Signed Stat McPhail Ball;

45. 1965 Very Rare Ali-Liston Stepin Fetchit Program;

46. 1973 Muhammad Ali Broken Jaw X-Ray Signed by Ali and Norton;

47. Muhammad Ali's Personal Ticket to Ali-London Fight;

48. Payne Stewart-Worn Cap, Knickers and Socks with Copy of a Letter from His Wife;

49. Early 1990s Andre Dawson Autographed Game-Used Bat;

50. 1998 Mark Grace Chicago Cubs Game-Used and Signed Bat with Team Letter;

51. Negro Leagues Single Signed Baseballs (8);

52. 1975 Muhammad Ali vs Chuck Wepner Fight-Worn Shoes;

53. Late 1950s Bob Cousy Boston Celtics Game-Used Home Durene Jersey;

54. 1992-93 Larry Johnson Charlotte Hornets Game-Used Road Mesh;

55. Jersey & 1992-93 Alonzo Mourning Game-Used Home Mesh Rookie Jersey (2);

56. 1994-95 Karl Malone Utah Jazz Game-Used Home Mesh Jersey;

57. 1994-95 John Stockton Utah Jazz Game-Used Home Mesh Jersey;

58. 1955 Harry Gallatin All-Star Game Uniform;

59. Late 1970s George Gervin San Antonio Spurs Game-Used Home Mesh Jersey;

60. 1986 Artis Gilmore All-Star Game-Used Uniform;

61. Circa 1970 Elvin Hayes San Diego Rockets Game-Used Home Durene Jersey (Very Rare);

62. Early 1980s Alex English Denver Nuggets Game-Used Home Jersey;

63. Late 1950s Slater Martin St. Louis Hawks Game-Used Home Jersey;

64. 1994-95 Jason Kidd Dallas Mavericks Game-Used Home Rookie Jersey;

65. Circa 1968 Cliff Hagan Dallas Chaparrals ABA Game-Used Home Jersey;

66. 2002 Donté Stallworth New Orleans Saints Game-Used Black Mesh Jersey;

67. Late 1980s Emmitt Smith Florida Gators Game-Used Helmet;

68. 1968 Gaylord Perry San Francisco Giants Game-Used Road Flannel Jersey;

69. 7/28/91 Dennis Martinez Signed "Perfect Game" Game Ball (PSA/DNA);

70. Various sports cards, stickers, and other items purchased from Roger Rumsey of New England Sports Cards, for $18,150 on or about November 4, 2004, pursuant to invoices dated 08/23/04, 09/16/04, and 09/21/04.;

71. 1999 Sammy Sosa Complete Run of Unused Home Run Tickets;

72. 1933 Gridiron Football Coin-Op Machine;

73. 1941 and 1943 Chicago Bears NFL Championship Game Programs (2);

74. 1950's "Fighting Irish" Pinball Game;

75. 1983 through 1986 Star Co. Basketball Card Complete Set Collection (36);

76. Cassius Clay Signed 1960 Olympic Program;

77. 1964 Clay vs Liston First Fight Site Program;

78. 1965-1978 Muhammad Ali Fight Program Collection (7);

79. 1972 Ali vs Patterson Fight Worn Trunks;

80. Muhammad Ali Fight Worn Robe from the Thrilla in Manilla;

81. Jimmie Foxx Single Signature Baseball;

82. Tris Speaker Single Signed Baseball;

83. "Superb" Mark McGwire Autographed Baseball Hoard (27);

84. Chicago White Sox Portraits Collection (21) by Andy Jurinko;

85. William Wrigley Autographed Photo;

86. 1930's "Charlie Grimm's Cubs" Portrait Pennant;

87. 1948 Charlie Grimm Chicago Cubs Complete Uniform;

88. Pre-1916 Eddie Collins Side-written Game Used Bat;

89. 1920's Ki Ki Cuyler Game Used Bat;

90. 1916-20 Ty Cobb Game Used Bat;

91. 1950's Williams "Lucky Inning" Pinball Game;

92. "Spectacular" 1957 Williams Deluxe "Official Baseball" Pinball Machine;

93. Negro League Old Timers Signed Jersey, Bat, and Poster;

94. 1991 Score Mickey Mantle Autographed PSA-Graded Proof Set (7);

95. High Grade 1951 Topps Ringside Boxing Near Set (82/96);

96. Mickey Mantle Signed Replica Jersey;

97. 1938 World Series Signed Team Ball;

98. Roberto Clemente Single Signature Ball;

99. 1965-68 Pete Rose Game Used Bat;

100. Early 1980's George Brett Louisville Slugger Signed Game Used Bat;

101. 1984 Mike Schmidt Home Run Game Bat;

102. "Unbelievable" Willie Mays Game Used Sunglasses;

103. 2 1987T FB Vending Boxes;

104. 96 1983T FB Cello Packs;

105. 1980T FB Wax Rack Pack;

106. 1973T FB Vending Box;

107. 1978T FB Vending Box;

108. 1985T FB Grousey Rack Box;

109. 3 1981T FB Rack Packs;

110. Complete 1962 Topps FB Set GPA 7.90;

111. Complete 1972 PSA Hockey Set GPA 8.32;

112. Various Superior Sports Auction Spring Items, purchased from "The Football Card Store" for $14,035.60, pursuant to invoice #3722;

113. Approximately 26 sports cards purchased in August 2005 for $31,864.00 from "The Football Card Store," pursuant to invoices #3746, 3747, and 3748;

114. 1964 Philadelphia Football Set, pursuant to invoice 3776;

115. Sports cards and other items purchased for $5,000 in or about September 2007 from "The Football Card Store" pursuant to invoices #6019 and 6016;

116. Sports cards and other items purchased from Mint State Inc. for $32,000 in or about March 2002 pursuant to invoices #188 and 189;

117. Sports cards and other items purchased from Mint State Inc. for $24,000 in or about April 2002 pursuant to invoices #240;

118. Sports cards and other items purchased from Mint State Inc. for $37,750 in or about August 2003 pursuant to invoices #1362, 1398, and 1401;

119. Sports cards and other items purchased in April and May 2004, from Mint State Inc. for $20,000 pursuant to invoice #1737;

120. Sports cards and other items purchased from Mint State Inc. for $69,000 in or about March 2005 pursuant to invoices #2672, 2684, 2686, and 2711;

121. Sports cards and other items purchased from Mint State Inc. for $8,938 in or about May 2005 pursuant to invoice #2720;

122. Sports cards and other items purchased from Mint State Inc. for $10,000 in or about January 2006 pursuant to invoices #3597 and 3600;

123. Sports cards and other items purchased from Mint State Inc. for $30,000 in or about April 2006 pursuant to invoice #3947; and

124. Sports cards and other items purchased from Mint State Inc. for $7,842 in or about August 2006 pursuant to invoices #4264 and 4270.

The supplemental affidavit of Special Agent Shawn Chandler, which is submitted herewith and is expressly incorporated by reference, sets forth the connection between defendant OHLE and the interests sought to be restrained.

## IV. THE PROPOSED SUPPLEMENTAL RESTRAINING ORDER

I. As explained in the accompanying affidavit, there is reason to believe that without restraints and prohibitions, JOHN B. OHLE III, the defendant, will attempt to frustrate the Government's forfeiture efforts by dissipating or concealing the assets the Government seeks to forfeit in this criminal prosecution. By entry of this supplemental restraining order, the Government merely seeks to maintain the status quo and avoid the dissipation of assets that will be forfeited to the United States upon a verdict.

J. The proposed restraining order is reasonable in that it seeks to restrain only assets listed in the forfeiture allegations to which the Government will become entitled upon the entry of a judgment of forfeiture. Thus, the proposed restraining order would cover only directly forfeitable property in which JOHN B. OHLE III, the defendant, has an interest.

16

K. Accordingly, it is respectfully requested that a restraining order issue enjoining JOHN B. OHLE III, the defendant, and his attorney, agents, and employees, and anyone acting on their behalf, and all persons or entities in active concert or participation with any of the above, from transferring or dissipating any interest held by JOHN B. OHLE III, the defendant.

WHEREFORE, the United States of America requests the entry of the order of restraint and prohibitions as submitted.

Dated: New York, New York
January 27, 2009

*Stanley J. Okula, Jr.*
Stanley J. Okula, Jr.
Assistant United States Attorney