```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,           :
                                    :   08-cr-1109 (JSR)
        -v-                         :
                                    :   MEMORANDUM ORDER
JOHN B. OHLE III, and               :
WILLIAM E. BRADLEY                  :
                                    :
        Defendants.                 :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

In 2010 and 2011, after a jury convicted defendant John Ohle III of one count of conspiracy to commit wire fraud and two counts of tax evasion, this Court entered two preliminary forfeiture orders against Ohle. Following the entry of those orders, Patricia Dalton Ohle, the Dalton-Ohle Investment Property Trust, the JSJD Grantor Trust, Festivus For The Rest of Us, Inc., and the Museum of Sports History, LLC (collectively, "Movants") filed a petition for ancillary relief. Movants and the Government eventually entered into a stipulation settling Movants' claims, and this Court entered a final order resolving the petition in May 2013. Over two years later, on July 20, 2015, Movants filed a motion pursuant to Federal Rule of Civil Procedure 60 to set aside the forfeiture order, claiming that Ohle's criminal conviction, on which the forfeiture order rests, was procured by fraud. On August 20, 2015, the Court

1

entered an order denying that motion. This Memorandum explains the reasons for that ruling.

At the outset, the Court rejects the Government's contention that this motion is time-barred. The Federal Rules permit a court, under Rule 60(b)(3), to set aside an order for "fraud . . . by an opposing party" and, under Rule 60(d)(3), to "set aside a judgment for fraud on the court." A one-year time limitation applies only to motions brought under the former provision. *See* Fed. R. Civ. P. 60(c)(1). In their reply brief, Movants make clear that they seek relief only under the latter provision, thereby eliminating any timeliness issue. *See* Reply Memorandum of Law in Further Support of Movants' Motion to Set Aside Forfeiture and for Return of Property, ECF Dkt. No. 267, at 2. Accordingly, the Court will address the merits of Movants' arguments.

A party seeking relief under Rule 60(d)(3) bears a formidable burden. "'[F]raud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988). It not enough to show that a judgment "has simply been 'obtained with the aid of a witness who, on the basis of after-discovered evidence, is

2

believed possibly to have been guilty of perjury.'" *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972) (per curiam) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944)); *see also Gleason*, 860 F.2d at 556 ("[N]either perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant."). Instead, the court's power to set aside a judgment for fraud on the court applies only to "that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Id.* (quoting 7 Moore, Federal Practice ¶ 60.33 at 515 (2d ed. 1971)).

Here, Movants claim that the Government perpetrated three separate frauds on the Court to obtain the convictions and judgment against Ohle. First, Movants claim that the Government failed to correct perjurious testimony from Hugh Uhalt, the son of Ecetra Ames, from whose trust Ohle embezzled funds. Second, Movants assert that the Government is suppressing IRS Form 1099s that show that the victim of Ohle's wire fraud conspiracy could not have been, as the Government argued and the jury found, Bank One, for

3

which Ohle worked at the time of the alleged criminal conduct.[1] Third, in a similar vein, Movants claim that the Government knew or should have known that it was misrepresenting to the jury the amount of a fee to which Bank One was entitled and that it would have enjoyed absent Ohle's criminal conduct.

The Court has, in effect, already disposed of the latter two arguments in its opinion denying Ohle's motion under 28 U.S.C. § 2255 to set aside his conviction and sentence. There, the Court explained that the Form 1099s, even if they existed (which the Government denies), would not prove that Bank One was not Ohle's victim and that the evidence supported the Government's claim with respect to the extent of the fee to which Bank One was entitled. *See Ohle v. United States*, No. 08-cr-1109 JSR, 2015 WL 5440640, at \*4-9 (S.D.N.Y. Sept. 8, 2015). Thus, because the alleged Form 1099s could not undermine the factual underpinnings of Ohle's convictions and because the Government made no misrepresentation, let alone a knowing and deliberate one, regarding the calculation of Bank One's fee, there was no fraud on the Court.

---

[1] The identity of Ohle's victim is important because, to invoke a ten-year statute of limitations for the wire fraud count, the Government had to prove that the victim of Ohle's conspiracy was a financial institution. *See* 18 U.S.C. § 3293.

4

Movants claim with respect to Uhalt's testimony is also without merit. At trial, Uhalt testified on cross-examination that he had power of attorney over his mother's affairs. In recent deposition testimony in a civil case, however, Uhalt admitted that this statement was false. In response to Uhalt's concession, Movants now claim that the Government either knew or should have known of the falsity of Uhalt's trial testimony and urge the Court to apply the rule, normally applicable to motions for a new trial, that a conviction must be set aside where "the Government 'knew or should have known' that it presented perjured testimony . . . [and] there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Memorandum of Law in Support of Movants' Motion to Set Aside Forfeiture and for Return of Property, ECF Dkt. No. 265, at 5 (quoting *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991)).

Assuming, *arguendo*, that the Government should have known of the falsity of Uhalt's statements[2] and the questionable proposition that the Government's failure to correct false testimony of which it "should have known" can support a claim of fraud on the court under Rule 60(d)(3),

---

[2] The Government denies actual knowledge, and the Court has no reason to doubt that representation.

5

Movants' claim still fails. Although Movants are correct that courts will order a new trial where there is a "reasonable likelihood" that perjurious testimony elicited by the Government could have affected the jury's verdict, see Wallach, 935 F.2d at 456, it is equally settled that "where independent evidence supports a defendant's conviction, the subsequent discovery that a witness's testimony at trial was perjured will not warrant a new trial." United States v. Wong, 78 F.3d 73, 82 (2d Cir. 1996); see also, e.g., United States v. Biaggi, 823 F. Supp. 1151, 1157 (S.D.N.Y. 1993) aff'd, 48 F.3d 1213 (2d Cir. 1994). This case falls in the category of cases in which the verdict does not depend upon the perjured testimony. This is perhaps demonstrated most clearly by the fact that the Second Circuit upheld Ohle's conviction on direct appeal against a sufficiency of the evidence challenge without any reference to Uhalt's testimony, see United States v. Ohle, 441 F. App'x 798(2d Cir. 2011), but an examination of the specifics of Uhalt's testimony supports the same conclusion.

Uhalt's testimony was, in general, of minimal importance to the Government's case. The Government used Uhalt's testimony as little more than a storytelling device to explain how the inquiry into Ohle's handling of Uhalt's

mother's trust began and to show that Ohle evidenced consciousness of guilt when he "turned white" after Uhalt confronted him about the administration of the trust. Trial Tr. at 2067:1-8. None of this testimony was integral to the Government's ability to establish the elements of the offenses of which Ohle was convicted. Indeed, Ohle's counsel accurately characterized Uhalt's testimony in his closing argument when he stated, "[Uhalt] wasn't a witness who had anything of any substance to say." Trial Tr. at 2085:12-13.

Further, Uhalt's specific claim to having power of attorney was arguably of no relevance at all to the Government's case. Movants try to inflate the importance of Uhalt's statement by asserting that, without power of attorney, Uhalt would not have been privy to the administration of his mother's trust and therefore would have lacked personal knowledge of the matters about which he testified. But nothing in the record substantiates Movants' claim that Uhalt would have only been involved with his mother's trust if he had power of attorney, and in fact, undisputed evidence lends support to the opposite conclusion: the Government introduced an exhibit showing that Uhalt had sixteen phone calls with John Wogan, Ohle's

7

co-trustee of Uhalt's mother's trust, during the relevant time period. See GX 30-46.

With the relevance of Uhalt's testimony properly framed, Movants' argument boils down to a complaint that the Government failed to correct the record regarding a collateral issue that, at most, could have affected the jury's assessment of a relatively unimportant witness's credibility. But even without a formal correction on the record, Uhalt's credibility was already called into doubt during cross-examination, which was so effective that this Court remarked during a side bar that defense counsel would be permitted to argue to the jury that Uhalt had simply lied about having power of attorney. Trial Tr. at 739:13-18. In any event, even if the jury fully credited Uhalt's statements at the time, when Uhalt's testimony is viewed in light of the entire trial record, there is simply no "reasonable likelihood" that his testimony could have affected the jury's verdict. Movants' argument must therefore be rejected.

Accordingly, for the foregoing reasons, the Court reaffirms its August 20, 2015 Order denying Movants' motion to set aside the forfeiture order. The Clerk of the Court is directed to close the motion at document number 264 of the docket.

8

```
SO ORDERED

Dated:   New York, NY                    _____
         December 30, 2015               JED S. RAKOFF, U.S.D.J.
```

9